**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|

JAMES E. KELLY, JR.,

     **Plaintiff,**

**v.**                                   **Case No.: GJH-21-553**

**UNITED STATES OF AMERICA,** *et al.*,

     **Defendants.**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In this action, Plaintiff James E. Kelly, Jr., brings admiralty and maritime claims against Defendants United States of America and Tote Services LLC a/k/a Tote Services, Inc. a/k/a Interocean American Shipping Corporation a/k/a Interocean Ugland Management Corporation ("Tote"). ECF No. 1. Now pending before the Court is the Government's Motion to Dismiss for lack of subject-matter jurisdiction. ECF No. 7. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the Government's Motion to Dismiss is granted.

**I.**      **BACKGROUND[1]**

Plaintiff Kelly is a resident of Maryland. ECF No. 1 ¶ 1.[2] At all relevant times, he was employed as a seaman and member of the crew of the ANTARES. *Id.* The ANTARES is a military cargo vessel kept in Baltimore, Maryland. *Id.* ¶ 2. Defendant Tote operated the vessel

---

[1] Unless stated otherwise, the facts relied on herein are taken from the Complaint, ECF No. 1, and presumed true.

[2] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

pursuant to a contract with the United States. *Id.* ¶ 1. Defendant Tote is a limited liability company formed under Delaware state laws. *Id.* ¶ 4.

On or about March 7, 2019, Plaintiff was working aboard the ANTARES when he slipped and fell on an unknown substance that had mixed with leaking water and had made the floor slippery. *Id.* ¶ 7. The water had leaked from a long-broken head into the passageway near Plaintiff's stateroom. *Id.* The broken head had existed for years without being fixed and was a hazard to Plaintiff and other seamen. *Id.* As a result of this fall, Plaintiff sustained severe injuries, including to his neck, thoracic spine, and lower back. *Id.* ¶ 8. These injuries have required extensive medical and surgical care and could require further care. *Id.* Plaintiff has suffered pain from the injury. *Id.* ¶ 9. He has also lost wages and has been prevented from engaging in usual activities. *Id.* He also claims that he will likely be permanently partially disabled. *Id.*

On March 3, 2021, Plaintiff filed the Complaint. ECF No. 1. Plaintiff brought claims of negligence under the Jones Act, 46 U.S.C. § 30104, *id.* ¶ 11, unseaworthiness, *id.* ¶ 14, and for maintenance and cure benefits, *id.* ¶ 17. On May 6, 2021, the Government filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 7. Plaintiff filed a response in opposition, ECF No. 12, and the Government replied, ECF No. 13.

## II.    STANDARD OF REVIEW

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citation omitted). Once a challenge is made to subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United*

*States*, 945 F.2d 765, 768 (4th Cir. 1991)); *see also Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010).

The court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (citation omitted). In a 12(b)(1) motion, the court may consider evidence outside the pleadings to help determine whether it has jurisdiction over the case before it without converting the motion to one for summary judgment, *see id.*, but the court "must presume that the factual allegations in the complaint are true[,]" *Cash v. United States*, No. 12-cv-0563-WDQ, 2012 WL 6201123, at *3 (D. Md. Dec. 11, 2012) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)).

## III.   DISCUSSION

The Government has moved to dismiss Plaintiff's suit for lack of subject-matter jurisdiction on two grounds. First, the Government argues that the United States is the only proper defendant. ECF No. 7 at 1. Thus, the Government argues that a suit may not be maintained against Defendant Tote. *Id.* Second, the Government argues that Plaintiff's suit against the United States must be dismissed because Plaintiff has failed to exhaust his administrative remedies. *Id.*

### A.  Exclusivity Provision

"The [Suits in Admiralty Act] and the [Public Vessels Act] . . . permit admiralty suits to be brought against the United States for causes of action arising out of the operation of vessels owned by or operated for the United States." *Manuel v. United States*, 50 F.3d 1253, 1255 (4th Cir. 1995).[3] "Generally, a 'suit for damages caused by a public vessel falls under the PVA,' and

---

[3] The Suits in Admiralty Act, 46 U.S.C. §§ 30901 *et seq.*, is formerly 46 U.S.C. § 741, and the Public Vessels Act, 46 U.S.C. §§ 31101 *et seq.*, is formerly 46 U.S.C. § 781.

all 'other admiralty claims against a federally-owned vessel . . . [fall] under the [SAA].'" *Sys. Application & Techs., Inc. v. United States*, 491 F. Supp. 3d 73, 81 n.4 (D. Md. 2020) (quoting *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015)).[4]

Remedies under the SAA and the PVA are exclusive. *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206 (4th Cir. 1995). As a district court recently noted:

> The SAA contains an exclusivity provision that prevents claimants from bringing suit against any defendants other than the federal government. That provision reads, "[i]f a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim."

*Gale-Ebanks v. Chesapeake Crewing, LLC*, 525 F. Supp. 3d 620, 625 (D. Md. 2021) (quoting 46 U.S.C. § 30904). "Where the PVA or the SAA provides a remedy against the United States, there is no recourse against the government agent whose actions engendered the lawsuit." *Servis*, 54 F.3d at 207. "Any remedy available under the [SAA] is exclusive of any other remedy 'arising out of the same subject matter' that the plaintiff might bring against the individual who actually caused the harm at issue." *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015) (quoting 46 U.S.C. § 30904). A district court lacks subject-matter jurisdiction over SAA or PVA claims not properly brought against the United States. *See id.* at 1247.

When an admiralty suit under the PVA or the SAA involves a private defendant, the court must determine whether the private party was an "agent" of the United States such that the exclusivity provision applies. *Servis*, 54 F.3d at 207. "[A] primary factor in determining agency status is the degree of operational control exercised by the United States." *Id.* at 208 (citing

---

[4] In practice, the two statutes operate similarly, and any differences are not relevant to this action. "[T]he PVA makes all claims subject to the [SAA], including its statute of limitations and its exclusivity provision, except to the extent to which the two are inconsistent." *Ali v. Rogers*, 780 F.3d 1229, 1234 (9th Cir. 2015); *see also Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206 (4th Cir. 1995) ("The PVA incorporates the SAA's exclusivity provision.").

*Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 445 (5th Cir. 1982)). "[I]t can reasonably be concluded that the term 'agent' as used in the exclusivity provision is synonymous with one who is engaged by the United States to manage and conduct the business of a government vessel." *Id.* (internal quotations omitted). The Fourth Circuit has drawn a distinction between contractors who perform discrete tasks, such as ship repair work, and the ship operator, who is responsible for management and operations of a United States vessel. *Id.* at 208. The former "were merely non-agent independent contractors" while the latter is a "general or operating agent" for the United States. *Id.*

At the relevant time, Tote was the contract operator of the ANTARES, a National Defense Reserve Fleet vessel owned by the United States Maritime Administration ("MARAD").[5] *See* ECF No. 7-2, Exhibit 1 (Naval Vessel Register); Exhibit 2 (Decl.) ¶¶ 6, 7.[6] Plaintiff also acknowledges that "Tote was awarded a contract for ship management and services, including operation and maintenance of U.S. vessels, including the U.S.N.S. ANTARES[.]" ECF No. 12 at 3.[7]

This Court agrees with the Government that Defendant Tote was an agent. Defendant Tote was "engaged" by the United States "to manage and conduct the business of a vessel owned or bareboat chartered by the United States." *Servis*, 54 F.3d at 209. Tote was thus an agent, and Plaintiff is precluded from suing Defendant Tote. *See, e.g.*, *Manuel*, 50 F.3d at 1259 (seaman

---

[5] MARAD is the successor to the War Shipping Administration. *See Raible v. Campbell*, 911 F. Supp. 185, 186 n.1 (E.D.N.C. 1996).

[6] The Government has provided the Declaration of Cameryn Lee Miller, a Transportation Industry Analyst at MARAD who is responsible for maintaining an archive of administrative claims filed by non-federal seaman serving aboard public vessels. *See* Exhibit 2.

[7] Plaintiff had alleged in the Complaint that, in the alternative, the ANTARES was a vessel "owned by" or "under a demise charter" to Defendant Tote. ECF No. 1 ¶ 5. Plaintiff acknowledges in the response that the ANTARES is owned by the United States and that Tote had "operational control." ECF No. 12 at 6.

injured aboard a government-owned ship was precluded bringing a maintenance and cure claims against the ship operator because of the exclusivity provision). The proper defendant is the United States.

### B. Administrative Exhaustion

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Neither the SAA nor the PVA create causes of action against the United States. Instead, they act only as a waiver of the sovereign immunity of the United States in admiralty cases. The acts merely provide the jurisdictional hook upon which to hang a traditional admiralty claim." *Manuel*, 50 F.3d at 1255 n.1 (citing *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1059 (5th Cir. 1989)); *Blanco v. United States*, 775 F.2d 53, 63 n.8 (2d Cir. 1985)).

In addition, suits for "death, injuries, illness, maintenance and cure" brought by seamen "employed on United States [] vessels as employees of the United States" are subject to the Clarification Act, 50 U.S.C. § 4701.[8] The Clarification Act requires a plaintiff to have first gone through the administrative claims process before filing suit. *See* 46 C.F.R. § 327.1. The plaintiff must comply with several requirements, 46 C.F.R. § 327.4, and file the claim with MARAD, 46 C.F.R. § 327.5. The claim must then be "administratively disallowed" before a plaintiff may file a suit. 46 C.F.R. § 327.8(a). This process must happen within the SAA's two-year statute of limitations. *See* 46 U.S.C. § 30905; *see also Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995). "Because the Suits in Admiralty Act waives the sovereign immunity of the United States, such actions must be brought in strict conformity with the act." *Id.*; *see also McMahon v. United States*, 342 U.S. 25, 27 (1951) ("While . . . legislation for the benefit of seamen is to be construed

---

[8] The Clarification Act is formerly at 50 U.S.C. § 1291(a).

6

liberally in their favor, it is equally true that statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign.").

The Government argues that because Plaintiff has not filed an administrative claim with MARAD, *see* Exhibit 2 (Decl.), the suit must be dismissed, ECF No. 7-1 at 6. The Plaintiff admits that he has not filed an administrative claim but argues that the Clarification Act does not apply to him. ECF No. 12 at 4.

"[The Clarification Act] allows seamen employed on vessels owned, operated or chartered by the United States to recover for injuries as if they were employed on privately-owned American vessels." *Morales v. United States*, 866 F. Supp. 84, 86 (E.D.N.Y. 1993), *aff'd*, 38 F.3d 659 (2d Cir. 1994). "The Act thus gave effect to a congressional purpose to treat seamen employed through the War Shipping Administration as 'merchant seamen,' not as 'public vessel seamen.'" *Johansen v. United States*, 343 U.S. 427, 434 (1952) (citing *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 792 (1949)). "The Act creates the legal fiction of an employment relationship between the seamen serving on federally owned vessels and the federal government in order to create tort liability under the SAA." *Raible v. Campbell*, 911 F. Supp. 185, 187 (E.D.N.C. 1996); *see also Ali*, 780 F.3d at 1234 n.3 (noting that the Clarification Act could have applied because plaintiff "was employed on a vessel owned by the federal Maritime Administration" but that it did not because the plaintiff did not bring claims for "the type of harms specifically covered by the Clarification Act.").

Plaintiff here was a seaman employed on a public vessel, and his claims are for injuries and maintenance and cure. ECF No. 1. Plaintiff argues that he had no employment relationship with the United States, ECF No. 12 at 4, but that is not relevant to whether he is a seaman covered by the Clarification Act. The Act merely creates a fiction of a relationship so that

seaman employed on public vessels can sue for torts. There is no requirement of a formal employment relationship between the United States and the plaintiff.[9]

The cases cited by Plaintiff are inapposite. In those, courts determined whether private defendants were agents of the United States such that they were shielded from suit. *See, e.g.*, *Servis*, 54 F.3d at 207 (declining to find defendants agents such that the exclusivity provision applied). As one court distinguished, "The Clarification Act's legal fiction of an employment relationship between the federal government and the seamen hired by contractors who operate its ships cannot be imported into other areas of the law . . . To so hold would be tantamount to holding every employee of every independent contractor who performs work for the government is a government employee." *Raible*, 911 F. Supp. at 188. These cases thus underscore that a seaman may be an "employee" for the narrow purpose of the Clarification Act—and not in any other way. *See, e.g.*, *Kasprik v. United States*, 87 F.3d 462, 464–65 (11th Cir. 1996) (A "seaman's claims arising from employment aboard vessels owned by the United States are governed by the Clarification Act, and enforced pursuant to the terms of the Suits in Admiralty Act."); *Davis v. United States*, 2005 WL 8173915, at *1 (E.D. La. Oct. 11, 2005) ("As a seaman aboard a vessel owned by and operated for the Marine Administration, the Plaintiff is an employee of the United States. As a United States employee, the Plaintiff's claim for maintenance and cure is governed by the Clarification Act and the Suits in Admiralty Act.").[10]

---

[9] "[The Clarification Act] broadens the SAA. It clarifies Congress' intent that sovereign immunity be waived for claims made by merchant seamen sailing on [War Shipping Administration]-operated vessels and provides that such claims be governed by the SAA. This clarification was thought necessary because during World War II the role of such merchant seamen was considered ambiguous." *In re Joint E. & S. Districts Asbestos Litig.*, 1989 WL 5312, at *2 (E.D.N.Y. Jan. 13, 1989), *aff'd*, 891 F.2d 31 (2d Cir. 1989).

[10] Plaintiff also argues that he had no notice that he was an "employee" of the United States. The Court has yet to find a case where notice is a requirement. In addition, the employment agreement references Tote's "successful offer" to "MARAD's Request for Proposal" in which Tote was "awarded a contract for ship management services, including operations and maintenance, of National Defense Reserve Fleet/Ready Reserve Force Fleet vessels[.]" ECF No. 12-1 at 5.  Plaintiff was thus on notice that he was working on a MARAD vessel.

Plaintiff here was covered by the Clarification Act and, under that Act, was required to exhaust the administrative process before filing this suit. This process must have been completed by March 7, 2021, or two years after the injury. *See* 46 U.S.C. § 30905. This Court thus lacks subject-matter jurisdiction over the claim, and it must be dismissed.

**IV.   CONCLUSION**

For the reasons discussed, the Government's Motion to Dismiss is **GRANTED**. A separate Order follows.

Dated:  January     7, 2022              /s/_____
                                         GEORGE J. HAZEL
                                         United States District Judge